CONLEY ET AL. v. DYER ET AL.

1. Water Rights — Appropriations — Application to Beneficial Use.

Filing requisite plats and notices of a water appropriation with the clerk and recorder, the commencement and construction of a canal with due diligence, and the actual diversion of water from a natural stream, unless accompanied by a beneficial use of the water, constitutes merely an inchoate right or interest therein, and, unless such beneficial use follows, the interest thus acquired does not ripen into an appropriation, the inchoate right terminates and the water goes to the junior claimants who have complied with the requirements.—P. 28.

2. Same—Reasonable Time—Words and Phrases.

What constitutes a reasonable time within which an appropriator of water for irrigation must actually apply the same to a beneficial use, depends on the facts and circumstances connected with each particular case.—P. 28.

3. Water Rights—Decree—Interlocutory.

A decree awarding water rights, after providing that a certain amount of cubic feet should be allowed proportionately as the parties increased their irrigable land, further provided that such increase and the user of proportionate additional amount of water appropriated therefor should be made with reasonable diligence. Held, that such decree only vested in the appropriators an inchoate right to the water contained in such appropriation, which could become fixed only on their applying the same to a beneficial use within a reasonable time.—P. 28.

4. Water Rights—"Abandonment"—Words and Phrases.

The term "abandonment," as applied to water rights, is applicable only to completed appropriations of water, and not to a contingent interest which never became a fixed right because of the claimants' failure to apply the appropriation to a beneficial use within a reasonable time.—P. 28.

5. Water Rights—Pleading—Complaint—Sufficiency.

In an action to enjoin the use of water by defendants, a complaint is sufficient which alleges that defendants were awarded a certain number of cubic feet of water for irrigation, contingent on their devoting the same to a beneficial use within a reasonable time; that, although sixteen years had passed since such award, defendants had made use of but a small portion of the water; that the total quantity of water awarded by that part of

the former decree was largely in excess of the entire flow of the stream; that the whole of the flow has been appropriated and used by plaintiffs and other consumers for many years; and that defendants are threatening to use and dispose of the remainder of such apportionment, and will do so, unless restrained, to plaintiffs' irreparable injury.—P. 29.

6. Same—Water Rights—Determination—Decree—Issues.

Where, in an action to enjoin the use of water by defendants, plaintiffs claimed no right in the ditch from which defendants obtained the waters in question, a decree which, after determining plaintiffs' rights, also apportioned the water in defendants' ditch as between themselves, was erroneous as to the latter provision, since not within the issues.—P. 30.

*Appeal from the District Court of Garfield County.*
*Hon. John T. Shumate, Judge.*

Action by Joseph M. Dyer, Otto Hanawald, Jefferson Corley, Mrs. Nettie Schultz, William Kissee, Otis Corley, J. B. Fry, George Wrightman, J. B. Fuller and Jacob H. Evans, appellees, against Edgar A. Conley, Phil Younger, George Douglas, B. Staton, Charles Staton and Ira Cissna, appellants. From a judgment for plaintiffs, defendants, other than defendant Curry, appeal.      *Reversed and remanded*
                                         *with directions.*

Mr. Chas. F. Caswell, and Messrs. Goudy & Twitchell, for appellants.

Mr. Edward T. Taylor, for appellees.

Mr. Justice Helm delivered the opinion of the court:

The present controversy relates to priorities in Water District No. 45, as determined by a decree entered on May 5th, 1888. This district lies west of the Continental Divide and includes territory contiguous to Grand river and certain of its tributaries. It was the district in which the first general adjudication of water rights took place in that portion of the

state known as the Western Slope. At the time of this adjudication it was impossible to determine with accuracy or completeness some of the questions involved in such proceedings; the government surveys had not yet been extended through the section, and the ranchmen or settlers picked out and marked off their agricultural claims as best they could; the country was but sparsely settled and each appropriator felt at liberty to draw upon his imagination and discount the future; that is to say, in proving the dimensions of the land claimed and the extent of the water required, as well as in giving the size and capacity of his ditch or canal, he took into consideration both his plans and needs for the future and his present actual uses. The result was that in many instances two or three times as much water was claimed and allotted as was needed to supply all reasonable present and prospective requirements; and in some cases priorities were recognized for more than the entire flow of the natural stream.

The court in its decree occasionally made both a final and an interlocutory finding and award in connection with a particular canal or claimant. To so much of the water as had already been applied to beneficial uses, and therefore constituted a completed appropriation, the decree was final and conclusive. But for the protection of the pioneer settlers, who had incurred great hardship and risk and were attempting in good faith to enlarge their cultivated holdings, it was sometimes deemed expedient to enter what may properly be termed an interlocutory or conditional decree. That is, to recognize and declare the size and capacity of the canal or ditch with reference to the land proposed to be irrigated, and thus determine the quantity of water required for such future use; then to decree a right to the same contingent upon the exercise of diligence in

constructing, extending or enlarging the ditch, as the case might be, and in applying the water therethrough; the requirement always annexed being that such construction or enlargement, application and use, should take place within a reasonable time from the date of commencement of the ditch or canal.

The particular appropriations in the present controversy involved were all from Cache creek, a tributary of Grand river. Appellees, who were plaintiffs below, claim through priorities numbered 22, 45, 51, 56, 63 and 83; these priorities representing different ditches and being awarded to them or to their grantors. Appellants who, together with one Curry, were defendants below, claim through priorities numbered 35 and 57. The two last mentioned priorities were given to what is known as the Holmes ditch. They cover the two species of adjudication referred to. No. 35 was original and final, for 100 cubic feet of water per minute of time; that being the quantity already applied from the Holmes ditch to beneficial uses; the date fixed for this priority was August 2d, 1885. No. 57 was an enlargement priority granted said ditch; it covered 425 cubic feet of water per minute of time; its date was fixed at June 27th, 1886; it represented the quantity of water claimed by defendants or their grantors for the irrigation of land not yet brought under cultivation. After declaring that said 425 cubic feet should be allowed proportionately as the parties increased their irrigable land, the decree continued as follows:

"And provided further, that said increase of such additional land and the user of said proportionate additional amount of water appropriated therefor, thereon, be made by said parties with reasonable diligence."

This decree has been accepted and acted upon by the water commissioner and by the parties in so

far as it relates to the distribution of water from Cache creek.

On June 5th, 1902, the present action was begun. It is in the nature of a suit in equity for a permanent injunction. A large part of the water claimed and used by plaintiffs is held through appropriations junior to that of said priority 57. And if defendants are entitled to the 425 cubic feet contingently awarded thereby and assert a right thereto, plaintiffs will be deprived of much of the water applied by them to beneficial uses since the decree was entered.

The complaint alleges the entry of said decree, together with the facts above stated in relation to the rights of plaintiffs and also in relation to the Holmes ditch and its priorities 35 and 57. That pleading likewise further avers, among other things: that plaintiffs, since the entry of said decree, promptly and diligently applied to beneficial uses the water awarded their priorities, and have ever since been and still are so using the same; that although sixteen years have passed since the date given said priority 57, yet defendants have made use of only a small portion of the 425 cubic feet contingently awarded thereto; that the total quantity of water, aggregating some 3,000 feet per minute, covered by this part of said decree, was largely in excess of the entire flow of Cache creek; that the whole of such flow has been appropriated and used by plaintiffs and other consumers; that plaintiffs have been for many years and still are using all of said 425 feet contingently awarded to priority 57 and unapplied by defendants; that by virtue of such user on their part and nonuser by defendants, plaintiffs have acquired a vested right as against defendants to the water so used; that defendants are now threatening to claim and preparing to use or dispose of the remainder of said 425 cubic feet of water under priority 57 not hitherto

applied by them, and will do so unless prevented by injunctive process from the court; and that such diversion and use by defendants will necessarily result in irreparable injury to plaintiffs.

All of the defendants, except Curry, filed an answer to said complaint, and the cause was tried to the court according to the practice in equity. A decree was entered granting the permanent injunction as prayed, and from that decree all of the defendants save defendant Curry prosecuted the present appeal.

The proceedings and decree are here challenged by counsel under two general heads or divisions: 1st, that the complaint does not state a cause of action; and, 2d, that, if a cause of action is stated therein, the same is not established by the evidence.

It will be observed that in so far as the decree of 1888 awards to the Holmes ditch priority 35 for 100 cubic feet of water per minute, it is really not challenged or sought to be disturbed in this action; the complaint mentions the same, but it also concedes to defendants the use and ownership of over 200 out of the 525 cubic feet allowed the two priorities. The entire controversy is limited to the 425 cubic feet covered by the contingent award under priority 57.

The theory of the action is that, by the decree, defendants were only entitled to this water upon condition that they enlarged the Holmes ditch and applied the same to beneficial uses with reasonable diligence; that the neglect or failure on their part for the period of sixteen years to do so does not show reasonable diligence and is not a compliance with the decree; and that it was then too late for defendants to perfect such compliance and make good their contingent or incipient right to this water; plaintiffs having, by their diligence, acquired inter-

vening vested rights superior to any interest or claim of defendants therein.

No principle in connection with the law of water rights in this state is more firmly established than that the application of water to a beneficial use is essential to a completed appropriation. Compliance with the law in other respects, that is: the filing with the clerk and recorder of the requisite plats and notices; the commencement and construction of the ditch or canal with due diligence; and even the actual diversion of water from the natural stream—all of these acts unaccompanied by the beneficial use of the water, constitute but an inchoate right or interest. And unless such beneficial use follows, the interest thus acquired does not ripen into an appropriation; the inchoate right terminates and the water goes to junior claimants who have complied with all the requirements of law. Moreover, it is equally well settled that in order to give the appropriation a priority dating from the commencement of the ditch or canal, the beneficial use of the water must take place within a reasonable time from such date; what shall constitute this reasonable time depending upon the facts and circumstances connected with each particular case.

The 425 cubic feet of water covered by priority 57 clearly belongs to the class of contingent or uncompleted appropriations. The question presented in this connection is, therefore, not one of abandonment, as that term, when employed in our irrigation law, applies only to completed appropriations of water; and there can be no abandonment of that which never existed. Hence it would be a mistake for us to apply the principles regulating abandonment to the loss by defendants of their contingent interest under priority 57.

If we were dealing with a completed appropria-

tion the decree of 1888 would probably be, as counsel for defendants contends, *res judicata.* It could not be challenged collaterally, and as a direct attack neither the complaint nor the proofs in this action would be sufficient.

But the integrity of the decree of 1888 is not disturbed; nor are the facts upon which it rests sought to be reinvestigated. On the contrary, that decree constitutes the basis of the present proceeding. When the court conditioned the right to the 425 cubic feet of water upon the application thereof to beneficial uses with due diligence, it held such right in suspension; the language employed was equivalent to an express declaration that in the absence of such diligence no appropriation would exist and the inchoate interest, tentatively recognized, would terminate. By that decree, therefore, the existence or non-existence of a vested or completed interest in this water was left open for future ascertainment and decision in some appropriate action or proceeding.

No objection is made to the form of this proceeding. It is not contended that the judicial investigation and settlement of the contingent right or interest involved may not take place through an independent action or suit in equity. Nor, as at present advised, are we disposed to find fault with the procedure in this respect. And the complaint, in our judgment, states a cause of action.

We come now to the other branch of the inquiry urged in support of a reversal, viz.: were the averments of the complaint sustained by the evidence?

This inquiry may be stated in another form, viz.: Does the evidence show that defendants did not use due diligence in completing their enlargement appropriation of 425 cubic feet of water through the Holmes ditch, by application of such water to beneficial uses within a reasonable time? What shall con-

stitute due diligence and what is a reasonable time depend, of course, upon many circumstances; and one adjudication cannot be taken as a test by which to determine these matters in another trial, for the reason that the circumstances are never precisely the same in both.

The record in this case is voluminous, containing over 800 folios of testimony alone; the parties were given a full and careful hearing; the court below saw the witnesses and heard them testify; and no effort was spared in the attempt to solve correctly the problem of diligence so presented.

The court reached the conclusion that defendants had applied to use 138.08 of the 425 cubic feet of water involved, with sufficient diligence to complete a valid appropriation thereof and entitle them to retain the same. And we would not feel warranted in disturbing his conclusions by anything found in the record.

Had the decree before us been limited to a decision of the foregoing matters, affirmance thereof would necessarily follow from the views above expressed. But a third subject is strenuously discussed in the briefs and was referred to at the oral argument. Not only does this decree determine the questions presented by the pleadings and the matters in controversy as between plaintiffs and defendants, but it also undertakes to adjudicate a subject not so involved.

After deciding that plaintiffs were entitled to the relief sought as against defendants, the court proceeded to consider and fix the status of defendants as among themselves. The controversy did not involve an apportionment or distribution of the water in the Holmes ditch between the different consumers taking therefrom. When it was decided that defendants were entitled to only 138.08 cubic feet out of the

contingent allowance of 425 cubic feet of water, and that plaintiffs could hold the remainder, the issues presented were practically determined. And when the court proceeded to partition this 138.08 cubic feet together with the original 100 cubic feet allowed under priority 35, among the defendants, he was exceeding the scope of those issues and his action was erroneous.

Defendants were consumers through the Holmes ditch. Plaintiffs were consumers through other ditches and had nothing to do with the Holmes ditch; they had no interest in the 238.08 cubic feet awarded that ditch, and it was a matter of no consequence to them how the water was divided among the consumers therefrom. The ratio of such distribution was a subject of regulation and might be a subject of dispute among defendants themselves; but defendants neither asked for nor sought in this action any such partition or apportionment. The fact that Curry made no defense and took no appeal, cannot affect the rights of his codefendants.

The court properly received evidence showing the quantity of land each of the defendants had brought under cultivation and how much water was required for the same. But this knowledge could only be used in the present action for the purpose of fixing the proportion of the 425 cubic feet of water that had failed to ripen into a valid appropriation and thus had become subject to use by plaintiffs.

In so far, therefore, as the present decree apportions the water from the Holmes ditch among defendants, the same is erroneous. It must be reversed and remanded with directions to the court below for re-entry with this feature eliminated. And the parties will bear their own costs in this court respectively. *Reversed and remanded with directions.*

Chief Justice Steele and Mr. Justice Maxwell concur.