[No. 5716.]

DRACH, EXECUTOR, ET AL. v. ISOLA ET AL.

1. **Judgment—Construction**—In the construction of a decree establishing priorities to the use of water the statements of claim upon which it is based may be considered, in connection with the record.—(141)

So of an agreed statement of facts showing the circumstances under which the decree was entered, and the conditions then existing in the water district.—(141)

The whole record must be brought into view.—(141)

And where the letter of the decree is susceptible of two meanings, one conformable to law, and the other opposed to it, the former construction must be adopted.—(142)

A decree adjudicating priorities to the use of water limited the right to the use of water to "one cubic foot for each 50 acres," and declared that "nothing herein shall be taken to grant *. * * water to any greater amount than in said ratio and proportion," and that "water is only allowed to flow into such ditches, in said ratio and proportion, as the land under said ditches shall be brought under practicable cultivation." Held that the decree was conditional; that its only effect was to declare the capacity of the ditches, and the volume of water to which the several claimants would be entitled for the future irrigation of their respective lands, conditioned, however, upon diligence in applying the water to the use for which the appropriation was claimed. All other rights were left inchoate, and only became absolute upon the application of the water to beneficial uses within reasonable time, and that whether a perfected right to the enjoyment of the water had vested, was left to be determined in some future appropriate proceeding.—(144)

2. **Water Rights—Adjudication of Priorities**—The court is without authority to decree to a claimant, unconditionally, a greater volume of water than he has already actually applied to beneficial uses.—(143)

3. **Water Rights—Appropriation**—In a proceeding to adjudicate priorities, under the statute, the defendants were decreed three and two-tenths cubic feet of water per second of time. The decree limited the volume of water to be used to one cubic foot per second of time for each fifty acres, and provided that the lands under the ditches should be brought under cultivation with reasonable diligence. This decree was entered in 1889. Up to and including the year 1903 the defendants had cultivated in all only 80 acres. The plaintiffs who were

awarded junior appropriations to a much larger volume, had, in the meantime enlarged the area of their cultivation to 520 acres. In the autumn of 1903, and the spring of 1904, defendants cleared and broke a large acreage of new land, never before irrigated. In June, 1904, the water commissioner, at the instance of defendants, closed down the plaintiff's headgates, in' order to enable defendants to irrigate this newly cleared land. Held, that by reason of their delays, the inchoate right conditionally granted to defendants by the decree of 1889, had never vested; that they could not be permitted, by action taken after such delay, to revive this imperfect and lapsed right, to the divesture of the rights which plaintiffs had, by their superior diligence, in the meantime acquired under the same decree.—(145)

Held, further, that the use of water in excess of the volume allowed by the decree, during the time of high water only, should not be said to establish a use under the decree.—(146)

And that a volume in excess of defendant's rights, obtained by a deceit practiced upon the water commissioner, in no manner impaired the rights of the plaintiffs, nor conferred any right upon the defendants.—(147)

*Appeal from Garfield District Court*—Hon. JOHN T. SHUMATE, Judge.

Mr. C. W. DARROW, for appellants.'

Mr. EDWARD T. TAYLOR, and Mr. CHARLES W. TAYLOR, for appellees.

Mr. JUSTICE WHITE delivered the opinion of the court:

This case involves certain priorities to the use of water for irrigation purposes, as determined by decrees of the district court of Garfield county, in water district No. 38. The cause was submitted and determined upon the pleadings, and an agreed statement of facts. Appellant McMillan has no interest in the controversy, except as the judgment may affect his official acts in the distribution of water, and here-inafter, unless it otherwise expressly appears, the words used as to parties will be understood as not including him.

Appellees and appellants constitute all the users of water from a small natural stream known as Four Mile creek, and the interests of appellants, who were plaintiffs below, are similar, so far as the rights of defendants are concerned. Defendants are owners of Four Mile ditch, taking its supply of water from Four Mile creek, and plaintiffs are the owners of all other ditches taking water from that stream. May 11, 1889, a general decree, relative to priorities in the district, was entered, in which all the ditches before the court were given specific priority numbers and decreed, respectively, specific quantities of water, subject, however, to certain provisions and conditions, to which reference will hereinafter be made.

The only ditches involved herein that were adjudged priorities under the 1889 decree, are the Four Mile ditch, priority No. 19, three and two-tenths cubic feet of water per second of time, original construction November 6, 1881; two ditches of plaintiffs with date of construction subsequent, and priority numbers junior to that of defendants, aggregating eight and six-tenths cubic feet per second of time.

Plaintiffs have various other adjudicated priorities for their several ditches, and claim certain appropriations not yet decreed, all subsequent, however, in point of time, to priority No. 19, and likewise to the adjudications of 1889. The decree of defendants, as well as those of plaintiffs, after enumerating the various ditches, and designating their respective priority numbers, continues as follows:

"Seventh—No part of this decree shall be taken or held as adjudging to any claimants, or present or future representatives of any claim to any ditch, canal or reservoir, or party holding, using or controlling the same, any right to take and carry by means of any canal, ditch or reservoir herein mentioned or by virtue of any appropriation herein ad-

judged any water from any natural stream except to be applied to the use for which such appropriation has been made, nor to allow any excessive use or waste of water whatever, nor to allow any diversion of water except for lawful and beneficial uses.

"Eighth—That throughout said district No. 38 one cubic foot of water per second of time is hereby adjudged and decreed to be sufficient in amount to properly and practicably irrigate fifty acres of land, and nothing in this decree shall be taken or held to grant to any tract or parcel of land water to any greater amount than in said ratio and proportion, whether said land be covered by one or more ditches.

"Ninth—That the priorities hereby established are granted and made absolute, but the user of the respective amounts of water hereby granted and decreed is restricted to the practicable utilization thereof by the parties lawfully entitled thereto, and water is only allowed to flow into said ditches in said ratio and proportion as the land under said ditches, respectively, shall be brought under practicable cultivation, *i. e.,* tilled, meadow or good pasture land. *And, provided,* that the said lands under said ditches respectively shall be brought under such cultivation, and the said proportionate amount of water used thereon, by the parties lawfully entitled thereto, with reasonable diligence."

It is agreed that at the time of the entry of the decrees, water was adjudicated to the various ditches on the basis of their carrying capacity and the amount of lands which it would be practicable to irrigate lying under the respective ditches, or which could be brought thereunder by way of extensions or laterals, irrespective of the amount of land then actually being irrigated; that, "in the year 1883 the defendants, or their grantors, irrigated of their land, by reason of their Four Mile ditch, about twenty-five

acres, and have each year gradually increased the
amount of land irrigated and cultivated by them, up
to eighty acres during the year 1903''; that the plain-
tiffs, or their grantors, prior to, or during the year
1884, irrigated two hundred and fifteen acres of their
lands lying under one of their ditches, included in
the 1889 decree, and have since gradually increased
the irrigated acreage thereunder ''up to two hundred
and fifty-five acres during the year 1903, twenty
acres having been brought under irrigation for the
first time within that year''; that under their other
ditch, included in the 1889 decree, plaintiffs irrigated
forty-five acres; that the total priorities decreed to
plaintiffs, as aforesaid, was nineteen and eight-tenths
cubic feet of water per second of time, and plaintiffs
had brought into cultivation and under irrigation
up to, and during the year 1903, a total of five hun-
dred and twenty acres.

In each irrigating season, until about June 1st,
Four Mile creek affords a sufficient quantity of water
for all users therefrom as they wish to take the same,
irrespective of their decrees or priorities, and ''dur-
ing high water, and as long as high water lasts up
to about June 1st, all of the plaintiffs and defend-
ants, and all of their grantors, have always used for
irrigation all the water their ditches would carry, or
all they could get, or all the water they wanted from
said creek, regardless of the amounts decreed to them
respectively.''   About June 1st in each year, the
water commissioner was called upon to distribute the
water among the several ditches in accordance with
their priority rights, and, in doing so, invariably
turned into the respective ditches, giving priority to
defendants' ditch, one cubic foot of water per second
of time to each fifty acres of land irrigated there-
under, except that during the year 1903, and for some
years, not stated, prior thereto, he turned into de-

fendants' ditch one and eight-tenths cubic feet per second of time upon the claim by defendants, and under the belief of the water commissioner, that they had ninety acres of land in cultivation.

In the fall of 1903, and the spring of 1904, the defendants cleared, plowed and put in shape to culti-vate, about fifty-four acres of new land that had not theretofore either been cultivated or irrigated. They then, at considerable expense, located, and in April, 1904, completed a siphon line from their ditch across a swale onto the eastern portion of their ranches, where their new land lay. Thereafter about May 1st, they turned the water into their ditch and commenced irrigating their ranches, and more particularly the newly cultivated land and crops thereon, applying three and two-tenths cubic feet of water per second of time, until about June 1st, when the amount reaching the headgate was reduced to about one foot by reason of plaintiffs, who were further up the stream, taking their quota of water under their re-spective priorities. The defendants thereupon called the water commissioner, who closed down the head-gates of plaintiffs' junior ditches and gave the de-fendants two and nine-tenths cubic feet of water per second, and thereafter further limited plaintiffs as the water became lower in the stream. Prior to 1904 the senior priority of plaintiffs under the decree of 1889, received its quota of water for the acreage in cultivation thereunder; and was never affected, by reason of the shortage of water due to the action of the water commissioner, until June 15, 1904, but was finally that season, cut off entirely. July 1st plain-tiffs brought this suit, praying that defendants, and each of them, including the water commissioner, be restrained from turning into Four Mile ditch from Four Mile creek, under and by virtue of priority No. 19, exceeding one and six-tenths cubic feet of water

per second of time, so long as all the remaining portion of the waters of the stream are needed by the plaintiffs under their respective appropriations and priorities; that water priority No. 19 be cut down and adjudged to include no greater amount of water than one and six-tenths cubic feet per second of time; that it be decreed that any inchoate right which may have at any time belonged to the defendants through priority No. 19, has by nonuser lapsed, been abandoned, and has never ripened into an absolute right; and for such other, and further, and different relief as unto the court shall seem just and proper.

The defendants filed an answer to which plaintiffs replied, and the cause was tried to the court according to the practice in equity. Upon final hearing a temporary writ of injunction previously issued, was dissolved, and the cause dismissed. From that judgment the plaintiffs prosecute this appeal.

The defendants assert that the decree of the court awarding priorities in 1889, is an absolute verity and cannot be questioned in the manner attempted by the plaintiffs; that the decree granted absolutely and unconditionally to Four Mile ditch, three and two-tenths cubic feet of water; that, therefore, that amount of water at the time of the entry of the decree belonged to the ditch for the use and benefit of the owners thereof, and if, at any time thereafter, the ditch ceased to be entitled to that much water, it must be by reason of something happening, or failing to happen, subsequent to the entry of the decree, that is, that it would require proof that defendants "have since the entry of the decree, abandoned or forfeited a portion of their priority right that was in, and by, that decree expressly 'granted and made absolute' to them."

Plaintiffs contend that, though the decree is a verity, it is so, as to the quantity of water, only to

the extent to which the water has been applied to a beneficial use; that the law under which the decree was rendered, must be so interpreted, and that the decree expressly so provides, and is, therefore, conditional; that the question of forfeiture or abandonment is not involved, but rather the question of the performance or nonperformance of certain conditions precedent to the vesting of an otherwise inchoate right. If the decree or decrees in question be absolute or unconditional, they cannot, at this late day, be reopened, in the absence of proof of fraud, for the purpose of reducing the quantity of water therein awarded, or for any other material change or correction.—*New Mercer Ditch Co. v. Armstrong*, 21 Colo. 357. If, on the other hand, the decrees of 1889 be conditional, this is a procedure in which the completed appropriations may be ascertained, and the vested rights of plaintiffs protected.

Whether or not a decree adjudicating water rights is conditional, necessarily depends upon the terms of the decree itself; yet the pleadings or statements of claim upon which the decree is based may be considered along with the decree, in ascertaining its meaning.—*New Mercer Ditch Co. v. Armstrong, supra.* In this case, the original statements of claim are not in evidence, but the agreed statement of facts, and the portion of the pleadings made a part thereof, show the conditions upon which the decrees here under consideration were entered, and all those matters essential in a statement of claim, as required by statute, found in the statement of facts and pleadings embodied therein, may properly be considered along with the decree, in ascertaining its meaning. Moreover, in construing the decree we must deduce its meaning, not from detached parts thereof, but from the whole instrument, and bear in mind the established principle of law, that the application of water

to a beneficial use is essential to a completed appropriation.

"No principle in connection with the law of water rights, in this state, is more firmly established than that the application of water to a beneficial use is essential to a completed appropriation. Compliance with the law in other respects, that is: the filing with the clerk and recorder of the requisite plats and notices; the commencement and construction of the ditch or canal with due diligence; and even the actual diversion of water from the natural stream—all of these acts unaccompanied by the beneficial use of the water, constitute but an inchoate right or interest. And unless such beneficial use follows, the interest thus acquired does not ripen into an appropriation; the inchoate right terminates and the water goes to junior claimants who have complied with all the requirements of law. Moreover, it is equally well settled that in order to give the appropriation a priority dating from the commencement of the ditch or canal, the beneficial use of the water must take place within a reasonable time from such date; what shall constitute this reasonable time depending upon the facts and circumstances connected with each particular case."—*Conley v. Dyer*, 43 Colo. 22, 28.

If these decrees were susceptible of two meanings, one of which would uphold the law, by recognizing a valid appropriation of water, only upon the application thereof to a beneficial use, and the other would overturn the law in that respect, every consideration of equity and public policy require that the former interpretation be adopted.

Directing our attention to some of the matters which may be considered along with the decree in ascertaining its meaning, we find that when the decree was entered, defendants had a ditch with a carrying capacity of three and two-tenths cubic feet

of water per second of time; that they had land
which, if irrigated, would require that amount of
water, but had brought under irrigation not to exceed
eighty acres, and had, therefore, applied to a bene-
ficial use not over one and six-tenths cubic feet of
water per second. Under these circumstances, the
court was without authority to decree an absolute
right to a greater amount than was then actually ap-
plied to a beneficial use. An absolute decree for
more would, at least, be voidable, if attacked in ap-
propriate proceedings brought within proper time.
Moreover, in the decrees the court expressly condi-
tions the right to the use of water to one cubic foot
for each fifty acres, and declares that, "nothing in
this decree shall be taken or held to grant    *    *    *
water to any greater amount than in said ratio and
proportion," and that, "the priorities hereby estab-
lished are granted and made absolute, but the user
of the respective amounts of water hereby granted
and decreed, is restricted to the practicable utiliza-
tion thereof,    *    *    *    and water is only allowed
to flow into such ditches in said ratio and proportion
as the land under said ditches respectively shall be
brought under practicable cultivation." The de-
crees then make it a condition precedent that the
lands under the ditches be brought under cultivation,
and the appropriate amount of water applied thereon
by the parties lawfully entitled thereto, with reason-
able diligence. Keeping in mind the facts existing
at the time, the necessity of an application to a bene-
ficial use to complete an appropriation, the lack of
authority in the court to award a definite quantity of
water until such application to a beneficial use, the
meaning to be given these decrees—that they are con-
ditional—is clearly apparent. By so construing the
decrees, the rights established or vested thereby, are
in conformity with the law. The court in adjudica-

ting the 1889 decree did no more than to recognize, and declare the capacity of the ditches with reference to the land proposed to be irrigated, and thereby determined the quantity of water required for such future use, and then decreed a right to the same, conditioned, however, upon the exercise of diligence in applying the water to the beneficial use for which the appropriation was claimed. · Certainly no greater absolute right is established by the decree than on the basis, and only to the extent, that water had been theretofore applied in the ratio of one cubic foot per second of time to fifty acres of land. All other rights are inchoate and could only become absolute if the water was applied to a beneficial use within a reasonable time. In *Conley v. Dyer, supra,* speaking of a similar decree, we said: "The language employed was equivalent to an express declaration that in the absence of such diligence, no appropriation would exist and the inchoate interest tentatively recognized, would terminate. By that decree, therefore, the existence or nonexistence of a vested or completed interest in this water was left open for future ascertainment and decision in some appropriate action or proceeding."

We cannot concur in defendants' assertion, that this suit is an attack upon the 1889 decree. The integrity of that decree is in no wise disturbed, nor are the facts upon which it was based sought to be reinvestigated. On the contrary, this suit effectually enforces the provisions of that decree. It is certainly not an attack on the decree to inquire and ascertain whether the condition precedent to rights therein named, has been complied with in apt time, or at all. The inchoate rights, designated in the decree, are conceded by plaintiffs, to have become absolute and vested, in defendants, in the irrigation season of 1903, to the extent of one and six-tenths cubic feet

of water per second of time, and that such rights so absolutely vested are senior to the priorities of plaintiffs. This, however, is not a concession that an inchoate right, which had never, and by reason of the lack of diligence can never, become fully vested, is superior to a fully vested right. Plaintiffs, having conceded to defendants an absolute appropriation of all the water they had actually applied to a beneficial use from the date of the decree, the law will not permit defendants, after a lapse of fifteen years from the date of the decree, and twenty-three years after the construction of their ditch, to perfect a contingent or inchoate right to make further appropriations, and thereby take away plaintiffs' vested rights previously acquired under the same, or like decrees.

The question of abandonment is not involved in this case. The term, as used in irrigation law, can apply only to completed appropriations of water. To abandon a water right presupposes possession thereof prior, and to, the time of abandonment. As said in *Conley v. Dyer, supra:* "The question presented in this connection is, therefore, not one of abandonment, as that term, when employed in our irrigation law, applies only to completed appropriations of water; and there can be no abandonment of that which never existed. Hence it would be a mistake for us to apply the principles regulating abandonment to the loss by defendants of their contingent interests."

Defendants assert, that in the agreed statement of facts it is admitted that they at all times used the full three and two-tenths cubic feet of water on the eighty acres of land in cultivation, and, therefore, they argue that, having applied the water to a beneficial use, they cannot be divested of the same. We think defendants are in error, in assuming the existence of such admissions. The admissions are, that

(10)

all the ditches, involved in the controversy, were of sufficient capacity to carry all the water adjudicated thereto, at the time of the entry of the general decree; that "in the early spring of every year during high water, and as long as high water lasts, up to about June 1st" all the parties to the controversy have used for irrigation, "all the waters their ditches would carry, or all they could get, or all the water they wanted from said creek, regardless of the amounts decreed to them respectively." How can it be said, from these admissions, that defendants, during such time, used more than one cubic foot for each fifty acres then in cultivation? From all that appears in the stipulation, that may have been "all they could get," or, "all the water they wanted from said creek." But should we assume that defendants, up to June 1st, actually used all the water their ditch would carry, it would in no wise entitle them, as against plaintiffs, to that amount of water. Until a controversy arises, as to the right to the use of water, whosoever will may freely use the same. No such controversy arose during any irrigation season, until about June 1st of each year. The use of water from the creek, without regard to the decree, during high water only, cannot be said to establish a use under the decree. At all times, when the distribution of the water was under the decree or decrees, defendants claimed, demanded and received water, only on the basis of one cubic foot to each fifty acres they claimed to have in cultivation, and plaintiffs received, and used, the balance on the same basis. By virtue of such use on their part, and nonuse by defendants, plaintiffs acquired a vested right as against defendants to the waters so used. Plaintiffs certainly never intended to concede, nor did the water commissioner intend to allow, to defendants, more than one cubic foot per second for each fifty

acres in cultivation.  Under these circumstances, the fact, that during 1903, and for certain undisclosed years previous thereto, defendants, under a false claim of ninety acres in irrigation, made to the water commissioner and the belief on his part of the truth of such claim, received two-tenths of a cubic foot per second of time in excess of their right under the decree, will not divest plaintiffs of, and invest defendants with, such additional water.  Securing, secretly and through false assertions by one, possession of a valuable property right, or unknowingly surrendering possession thereof by the owner, will not invest the former with, nor deprive the latter of, its ownership.

We think the trial court was wrong in its judgment of dismissal.  The complaint stated a cause of action, and the agreed statement of facts supported it, and entitled the plaintiffs to the relief prayed. The judgment, is, therefore, reversed, and the cause remanded for further proceedings in conformity with the views herein expressed.  *Reversed.*

Chief Justice Steele and Mr. Justice Bailey concur.