[No. 5958.]

CRAWFORD CLIPPER DITCH COMPANY v. THE NEEDLE ROCK DITCH COMPANY ET AL.

1.    **Water Rights—Adjudication of Priorities—Scope of Jurisdiction**—The absolute right to the use of water may lawfully be decreed only upon the actual prior application thereof to a beneficial use. This is the extent of the court's authority.—(181)

2.    ——Construction of Decree—In a proceeding under the statute (Mills' Stats., secs. 2399-2439; Rev. Stats., secs. 3276-3320), the decree awarded to each of several ditches a volume of water equal to its carrying capacity, but by a proviso, limited the volume to a designated number of cubic feet per second of time, until those entitled thereunder should have increased the area of their cultivated land, prescribing the exact acreage then in cultivation,—and thereafter to a volume "in the ratio and proportion of one cubic foot per second of time, for each forty acres of such additional lands," and with the further proviso that such increase of cultivation and use of the water should be made with reasonable diligence.

The decree was construed as absolute as to the volume

which had then been applied to beneficial use, and interlocutory, as to the residue of the carrying capacity of the ditches; and it was held that the rights, if any, conferred by the interlocutory features of the decree, were necessarily inchoate; that the contingent interests, so conditionally awarded, were held in suspension, and their existence or non-existence, as a completed and perfect interest, was left to future ascertainment in some appropriate proceeding; that these inchoate interests were not controlled by the rules which regulate the loss of vested water rights by abandonment; that the use by the proprietors of one ditch of the full capacity of that ditch, only during high water, and in full recognition of the superior rights of the others, as declared in the absolute features of the decree, had not the effect to establish a use under the conditional provisions of the decree, superior to the absolute right conferred by the decree upon such other ditches.—(181-184)

3. ——Adverse User—The use of a specified volume of water, only after others entitled to waters from the same source have been satisfied, and in full recognition of their superior right, is not adverse to such other consumers, and as to them confers no right; and the actual use by such other consumers, with the full recognition of their superior right, for eleven years, of a specified volume of the water, confers upon them respectively, a vested right as to the volume of water so used.—(182)

4. Judgments—Construction of Record—Where a decree is susceptible of two meanings, one in accordance with the statute, and the other in disregard of it, the former must be accepted. —(182)

5. Cases Overruled, Distinguished or Explained—Waterman v. Hughes, 33 Colo. 270, distinguished.—(185)

*Appeal from Delta District Court*—Hon. THERON STEVENS, Judge.

Messrs. VAILE, McALLISTER & VAILE, Messrs. KING & STEWART, and Mr. WILLIAM W. FIELD for appellant.

Mr. W. H. BURNETT for Scrub Oak Ditch No. 2, appellee.

Mr. MILTON R. WELCH and Messrs. GOUDY & TWITCHELL for Needle Rock Ditch, Daisy Ditch, Lone Rock Ditch, Wilson and Pankey Ditch, Hice Ditch, and Pilot Ditch, appellees.

Mr. JUSTICE WHITE delivered the opinion of the court:

This controversy relates to priorities to the use of water for irrigation purposes in Water District No. 40, as determined by a general decree of June 17, 1889, and subsequent decrees, all entered by the district court of Delta County. The particular appropriations involved are from Smith's Fork or its tributaries, the former a tributary of the Gunnison River.

The appellant and the appellees, except the owners of the McLeod Ditch and the Scrub Oak Ditch No. 2, participated in the adjudication of 1889, offered evidence and obtained decrees. These decrees are similar in form. The ditches are each given a priority number, and an amount of water equal to the carrying capacity of the ditch, followed, however, except in one instance, by a proviso limiting the amount of water permitted to flow into a ditch, to a designated number of cubic feet per second of time, "until such time as said parties shall have increased their cultivated meadow and pasture land thereunder to more than (naming the exact acreage then in cultivation), and then the increase in the amount of water so permitted to flow into said ditch shall only be in the ratio and proportion of one cubic foot per second of time, for each 40 acres of such additional lands. And, provided further, that said increase of such additional lands, and the user thereon of such proportionate additional amount of water, appropriated therefor, shall be made with due diligence."

These ditches were nearly all constructed by pioneers who settled along Smith's Fork in 1881, and shortly thereafter. At that time the land was all a part of the public domain. The stockholders of the Crawford Clipper Ditch, which was among

the first constructed, acquired ownership of certain of these lands, and constructed the Crawford Clipper Ditch. Other pioneers, acquiring ownership of some of the land, about the same time, constructed the ditches of appellees, or some of them. The absolute priorities represented the quantity of water that had, at the time of the 1889 adjudication, been applied to a beneficial use by the owners of each ditch respectively; while the conditional priorities represented what might possibly be needed, if all the lands under such ditches, and which could be irrigated therefrom, were settled upon and brought under cultivation. After the entry of the decree, water was distributed by the water commissioners, except as hereinafter stated, in accordance with the absolute portions thereof. The stream "during the low-water periods," carries only about 30 cubic feet per second of time. It, nevertheless, afforded sufficient water for all the lands settled upon and irrigated in those early days. However, newcomers soon arrived, and other lands were filed upon, and title secured from the government. These newcomers became stockholders in the Crawford Clipper Ditch, or interested in other ditches, and "during times of high water the full carrying capacity of the ditch was run," and the newly acquired lands, together with other lands of the old settlers, were irrigated. Neither the newcomers, acquiring and settling upon the public land, nor the old-timers, putting in new land, and claiming under the conditional portions of the decree, received water until the absolute priorities had been supplied. This condition continued until a modification, in 1903, of the 1889 decree, as hereinafter explained.

July 16, 1900, the Crawford Clipper Ditch Company and the Needle Rock Ditch Company filed in the court their joint petition and separate state-

ments, in which they set forth substantially the 1889 decree, alleged their compliance with the conditions thereof, and that "subsequent to taking the testimony upon which the said prior adjudication was had and decree rendered," they had "appropriated additional amounts of water," and increased their cultivated lands respectively, praying for a determination of their rights as shown by increased acreage since the 1889 decree. A reference was ordered, evidence taken, and report thereon made October 10, 1901. February 27, 1903, the decree recommended by the referee was dated, signed by the judge, and duly entered of record. The 1889 decree was thereby modified and materially changed; new priorities were created, and an increase of over 12 cubic feet of water per second of time was decreed the Crawford Clipper Ditch, under its conditional decree, antedating the absolute priorities established by the 1889 decree, in appellees. The 1903 decree was administered by the water commissioners until February 13, 1905, when appellees, or some of them, filed petitions for reargument and review thereof. May 5, 1905, the court vacated the 1903 decree, and entered a new one, re-establishing the verity of the 1889 decree as to the absolute portions thereof. It was further decreed therein that appellant's ditch, and the ditches of the appellees, or some of them, were entitled to additional appropriations, and the priority thereof fixed in each case, as of the actual date of the application of the water to a beneficial use, except all such additional appropriations were made subject and inferior to the absolute priorities established by the 1889 decree. From that judgment and decree, this appeal is prosecuted.

The principal contentions of appellant are: That the decree of 1889 vested in it, absolutely, 83.52 cubic feet of water per second of time, with Priority

No. 3; that such right can only be divested by showing affirmatively that the conditions under which that amount of water was decreed to be permitted to flow into its ditch have not been fulfilled; that the failure to fulfill the conditions of the decree must be such failure to use the water as would amount to abandonment of a water right; that, under any view of the matter, appellant, with due diligence, brought under irrigation additional acreage, and the appropriation of water therefor is appropriation No. 3 of the 1889 decree by reason of the terms thereof.

We are of the opinion that the decree of 1889 has both absolute and interlocutory features. Absolute as to that portion decreeing that there shall be permitted to flow into the respective ditches the amount of water that had at that date been applied to a beneficial use; interlocutory as to the remainder of the carrying capacity of such ditches. At the time of the entry of the decree, the court established in each ditch an absolute right to the full amount of water per second of time that had been applied to a beneficial use, and gave such appropriation a number, and, to that extent, it was absolute. It tentatively recognized an inchoate right to additional water, which inchoate right, if of any validity, might become an absolute right, under the doctrine of relation, if the water was applied to a beneficial use with due diligence. As the absolute right established could lawfully be based only upon the application of the water to a beneficial use, the right decreed must be measured thereby. This was the extent of the court's authority in the premises, and the decree being susceptible of that construction, such must be the meaning ascribed to it. Bearing in mind the facts existing at the time, the necessity of an application of water to a beneficial use to constitute a valid appropriation, the lack of authority in the

court to award a definite quantity of water until such application, we must, and do hold, that whatever rights were covered by the interlocutory portions of the decree were necessarily inchoate. This is the plain meaning of the decree. But were it susceptible of other meanings—one of which would be in accordance with the law by recognizing a valid appropriation only upon the application of the water to a beneficial use, and others would disregard the law in that respect, the former interpretation must be adopted. This rule was declared and applied in *Drach v. Isola,* 48 Colo. 134.

The question of abandonment of a water right is not involved. We have held that to abandon such right presupposes possession thereof prior, and to the time of abandonment; that there can be no abandonment of that which never existed. "Hence it would be a mistake for us to apply the principles regulating abandonment to the loss" of these contingent interests. As said in *Conley v. Dyer,* 43 Colo. 22, "The language employed was equivalent to an express declaration that in the absence of such diligence no appropriation would exist and the inchoate interest, tentatively recognized, would terminate." To the same effect is *Drach v. Isola, supra.*

When the court conditioned the right to additional water upon the application thereof to beneficial uses, with due diligence, it held such right in suspension. "By that decree, therefore, the existence or non-existence of a vested or completed interest in this water was left open for future ascertainment and decision in some appropriate action or proceeding."

But appellant, under this view, maintains, that it has complied with, and fully performed the conditions imposed by the decree; that the evidence shows that in 1889, and each year thereafter, it increased, with due diligence, its acreage irrigated, and it, therefore, contends, that the additional "appropriations

should relate to the beginning of the ditch, and take Priority No. 3 as awarded by the 1889 decree.''

It is argued that the referee reported, as the result of some of the hearings, that additional lands of stockholders of the appellant, had been brought under irrigation ''with due diligence,'' and that such findings were approved by the court. It is true such meaning could be gathered from portions of the referee's reports and the decree. However, other portions thereof, together with the overwhelming weight of evidence, clearly establish, that none of such additional lands were brought under irrigation, by water taken from the stream, to the exclusion of the rights of the appellees, under the absolute portion of the priorities established by the 1889 decree. On the contrary, the superiority of all the absolute priorities under that decree was recognized and adhered to, and no water was distributed under the conditional portions, until the absolute priorities thereunder had been supplied, except during the existence of the 1903 decree. We do not think the words found in the reports of the referee, upon which the 1903 decree was based, or the language of the court in vacating that decree and entering the one of 1905—which is the one here under consideration—can be properly held, under the circumstances of this case, as a finding that the additional lands of appellant were brought under irrigation with due diligence, so as to make the appropriations therefor, under the doctrine of relation, a part of appropriation No. 3 of the 1889 decree. What shall constitute ''due diligence'' in any case, depends upon many circumstances. The additional land was not brought under irrigation by water distributed to the Crawford Clipper ditch, under the conditional decree. It was only ''during times of high water the full carrying capacity of the ditch was run,'' and such additional lands brought under irrigation. The use of water from the stream,

during high water only, and in full recognition of the absolute priorities decreed to the ditches of appellees, cannot be held to establish a use in appellant under the conditional portion of the decree superior to appellees' recognized rights. The appellant had no additional vested rights until the conditions of the decree were fully complied with, and the means used in complying with those conditions necessarily measure the additional vested rights acquired, if any. It certainly would be improper to hold that a right held in suspension, inchoate in its nature, and which could only become fixed and certain by the application of water to a beneficial use, within a reasonable time, had become fully vested, and superior to other vested rights, by acts that in no wise interfered with the latter, but which were in full recognition thereof. From 1889 until the entry of the 1903 decree, and subsequent to its annulment, the appellant received only 12 1-2 second feet, until after appellees had each received the quantity to which they were entitled, respectively, under the absolute portions of the decree. Thus the very condition precedent to transforming the inchoate right into a vested right, namely, the application of the water to a beneficial use, was made in full recognition of the superior rights of appellees. The latter continued, without interruption, to use the water which they were using when the inchoate rights were recognized.

By virtue of such use on their part, and non-use by appellant, during all these years, appellees acquired a vested right as against appellant to the waters so used. What would have been the rights of the parties, had the appellant, within a reasonable time, with or without the consent of appellees, applied the water to the irrigation of its lands, to the exclusion of the rights of appellees under the absolute portions of the 1889 decree, instead of in recognition thereof, or had diligently pressed the court, within

such time, to award to it some fixed quantity, for that purpose, as against the claims of appellees, need not be determined. No such questions are involved in this controversy.

The case is unlike *Waterman v. Hughes*, 33 Colo. 270, relied upon by appellant. That case is clearly distinguishable from this. It is therein stated, that for many years water had been distributed in accordance with the provisions of the conditional decree; that no objections were made thereto, and if objections had been seasonably made, it was doubtful if the water commissioner could have lawfully allotted any water thereunder until such time as the court awarded to the conditional decree some fixed quantity. In the case at bar water was never distributed under the conditional part of the decree, and no diligence was manifested in seeking to establish rights thereunder by adjudication, but rather an acquiescence manifested, as will presently appear, in an adverse judgment entered relative thereto. In 1890, the owners of the Virginia Ditch filed in the district court a petition for further adjudication of the water rights of Smith's Fork. In that proceeding the appellant and the Needle Rock Ditch Company appeared, and filed statements, claiming that they had increased the acreage irrigated from their respective ditches, and asked that their conditional decrees be made absolute. A referee was appointed, testimony taken, and the referee's report recommending a decree, presented. Exceptions were filed to the report, which came on for hearing February 21, 1894. The order thereon entered by the court, after reciting the formal matters of appearance, etc., reads: "And being fully advised in the premises, doth find and order: That the report of the referee be not confirmed, and that the findings and decree returned by the referee be, and the same are hereby, set aside and held for naught; and it is further ordered that the

said, The Needle Rock Ditch and the Crawford Clipper Ditch be, and they are hereby, dismissed herein without day.''

Appellees, or some of them, contend that the above order and judgment was an adjudication of the same matters here involved, and not having been appealed from or set aside in any way, became final, and is a bar to the claim made in this cause by appellant. The appellant, on the contrary, contends, that the judgment in question was nothing more than a refusal to consider the application for additional appropriations, at that time, and constitutes only a judgment of nonsuit or dismissal. While it appears that the questions presented in that proceeding, the relief sought, and the parties thereto, were the same as in the case at bar, it seems the order of dismissal was entered, because the court was of the opinion that it had no jurisdiction to determine the matter, as to the intervening ditches, because they had not been named in the petition of the Virginia Ditch owners, as ditches against which priorities were claimed. Under these circumstances, we shall not determine whether that judgment or decree is a bar to this proceeding. However, we think it of value as indicative of the way in which the 1889 decree was construed, understood, and accepted by the users of water. Moreover, the action of appellant, after these proceedings, indicates that it was satisfied with conditions as they then existed. It made no further effort to change conditions, until the filing of the petition upon which the decree of 1903 was based— more than eleven years after the entry of the 1889 decree. In the meantime other water users, under the absolute priorities of that decree, rested secure in their rights, expended money in improving their holdings, with full knowledge upon the part of appellant. Bearing in mind that the decree held the right to additional water in suspension, that it only

recognized an inchoate right, which. never fully vested by user, and was decreed to exist, we think the lapse of time, and the action of the parties in the premises, precludes appellant establishing a vested right under the conditional decree as against the superior, recognized, absolute rights of these appellees therein and thereby established.

Other questions presented, we do not deem necessary to consider. Upon the whole record, and the merits of the controversy, it appears that the decree is just and proper, and it is, therefore, affirmed.

*Affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE BAILEY concur.