THE NEW MERCER DITCH COMPANY v. ARMSTRONG, WATER COMMISSIONER.

1. WATER RIGHTS—STATUTORY ADJUDICATION.

The object of the statutes providing for the adjudication of water rights was to settle questions of the relative priorities of the claimants of water for the purposes of irrigation. After the expiration of the time limited by the act, the decree cannot be reopened by a party thereto, in the absence of fraud, for the purpose of reducing the quantity of water therein awarded, or for any other material change or correction.

2. SAME—EXTENT OF APPROPRIATION.

The law under which the decree under consideration in this case was rendered and the decree itself contemplate that no claimant shall be entitled to the use of a quantity of water in excess of that actually needed for the purposes for which the appropriation was made.

3. Same—Evidence.

The statement of a claimant of water filed in the statutory proceeding for adjudication of water rights is admissible in evidence along with the decree in the proceeding to enable the court to interpret or construe the latter.

4. Abandonment.

The distinction must be observed between the abandonment of an irrigating ditch and the abandonment of the right to the use of water for irrigation.

5. Same.

One may not as against subsequent appropriators divert and for an indefinite or for an unreasonable length of time hold water for purposes of mere speculation, and make no beneficial use of it while so holding, nor may he divert more than he needs for the purposes for which the diversion was made; and whether or not the decree under which he claims limits him to an economical use of water and to a quantity necessary for the purposes of the appropriation, the result would be the same.

*Appeal from the District Court of Larimer County.*

This action was to restrain the water commissioner of water district No. 3, in division No. 1, from interfering with the flow of water into the headgate of plaintiff's ditch. The complaint alleges that the plaintiff is the owner by purchase of priorities Nos. 1 and 8 to the use of water out of the Cache la Poudre river, the first of which entitles it to 24.81, and the latter to 8.7 cubic feet of water per second of time, both of which priorities were duly decreed to its grantor, Joshua Yaeger, in April, 1882, by the district court of Larimer county, in proceedings instituted under the acts of 1879 and 1881, providing for settling of priorities of right to the use of water for irrigation.

The complaint charges that the defendant, as water commissioner, refuses to recognize the plaintiff's rights under the decree, and declines to turn into the headgate of its ditch the water which these priorities give, and which it needs to irrigate its lands.

The first defense of the answer is a general denial. The second defense alleges in substance that the priorities mentioned were awarded to Yaeger to be used to irrigate only

120 acres of land by means of the Yaeger ditch, and that it never has carried, and never could carry, more than two and one half cubic feet of water per second of time; and that the land intended to be irrigated thereby does not require for proper cultivation to exceed the said quantity.

During all the times since, as well as before, the decree was rendered, all the residue of the waters of the stream is averred to have been diverted and continuously used by subsequent appropriators whose rights the water commissioners have recognized in distributing water under the decree.

The third defense alleges that Yaeger, the then owner of these rights, wholly and voluntarily abandoned them in the year 1882, and that since said time no use thereof has ever been made by him, or by any one claiming under him.

A replication was filed, traversing these affirmative defenses of the answer. The court referred the cause to a referee, who heard evidence, made findings of fact and stated conclusions of law therefrom, and reported the same to the court, accompanied by his recommendation that the complaint be dismissed.

Among the findings of fact is one to the effect that since the date of the decree, and up to May 18, 1891, when he attempted to sell and convey these rights to the plaintiff, Yaeger did not at any time divert or use water to exceed in amount 3.5 cubic feet of water per second of time, and, as to the excess, there was an abandonment by him, which thereafter had been legally appropriated by others. There was also a finding that after Yaeger conveyed both these priorities to the plaintiff, the latter, before the beginning of this suit, reconveyed to him the 3.5 cubic feet of water, the same being, in amount, equal to the quantity which, and which only, he had at any time applied to beneficial use.

From these findings the referee concluded, as a matter of law, that as to any water in excess of 3.5 cubic feet per second of time, a failure by Yaeger to make any use of the same within a reasonable time after the original diversion

should be treated as an abandonment. The court approved the findings of the referee, adopted his conclusions of law as well as of fact, and entered a judgment dismissing the complaint, from which judgment the plaintiff appeals.

Mr. George W. Bailey and Mr. E. A. Ballard, for appellant.

Mr. J. W. McCreery and Messrs. Robinson & Love, for appellee.

Mr. Justice Campbell delivered the opinion of the court.

The controversy can best be presented by giving a brief statement of the contentions of the respective parties. The appellant asserts that the decree of the court awarding these priorities in 1882 is an absolute verity, and cannot be questioned in the manner attempted by the appellee; that the two years have elapsed since the date of the decree, within which time, upon a proper showing, it might be reviewed, as provided in the irrigation act, as have also the four years therein limited as the time within which priorities to the use of water might be established by appropriate actions existing previous to the passage of said act; that there never has been an abandonment of the rights decreed to Yaeger; and that no rights of subsequent appropriators have been injuriously affected by the sale of these rights to the plaintiff and the change of the place of diversion and use sought to be made by the plaintiff after its purchase in 1891.

The appellee's position is that while the decree is a verity, yet that it is so, as to the quantity of water, only to the extent to which the water has been applied to a beneficial use; and that the law under which the decree was rendered must be so interpreted, and the decree itself expressly so provides; that the rights of subsequent appropriators would be infringed, not by the sale of Yaeger's priorities, but by the change of the point of diversion and place of use attempted to be made by his grantee.

The object of these irrigation statutes was to settle questions of the relative priorities of the claimants of water for the purposes of irrigation. The decrees rendered thereunder do not purport to grant any new property rights, but rather embody in a permanent form the evidence of those previously acquired; while the statutes further provided certain regulations for the distribution by the state of the water according to the priorities thus ascertained.· Yet, after the expiration of the time limited by the act, the decree cannot be reopened by a party thereto, in the absence of proof of fraud, for the purpose of reducing the quantity of water therein awarded, or. for any other material change or correction.

But we do not understand the object of the defense here to be a setting up of any claims to a priority of rights to water for irrigation in this water district adverse or contrary to the effect of the decree. Priority No. 1 dated from June, 1860, No. 8 from June, 1863, the latter being virtually acquired and enjoyed through an enlargement of the earlier ditch. After awarding to the Yaeger ditch the priorities mentioned, the decree contains this clause :

"No part of this decree shall be taken or held as adjudging to any claimant or present or future representatives of any claim to any ditch or canal or reservoir or party holding, using or controlling the same, any right to take and carry by means of any canal, ditch or reservoir herein mentioned, or by virtue of any appropriation herein adjudged, any water from any natural stream except to be applied to the use for which such appropriation has been made; nor to allow any excessive use or waste of water whatever ; nor to allow any diversion of water except for lawful and beneficial uses."

The defendant introduced in evidence the statement and amended statement of Yaeger, which were filed with the referee who took the evidence upon which the decree in question was founded, from which it appears that the land intended to be irrigated, and for the irrigation of which

Yaeger claimed a priority, consisted of about one hundred and twenty acres. To the introduction of these statements, as well as to the action of the referee in reopening the case in order to enable the defendant to introduce the same, the plaintiff objected.

The action of the court, however,—which, upon a proper showing by affidavits, after the defendant had rested his case, was the reopening of the hearing that defendant might introduce these statements, which theretofore could not be discovered,—was within the reasonable discretion of the referee, and it was not abused. These statements may be likened to a pleading upon which a judgment is based, and they are proper to be introduced along with the decree to enable the court to interpret or construe the latter in the light of the claimant's own assertion of his demand. Both the law under which this decree was rendered and the decree itself contemplate that no claimant shall be entitled to the use of a quantity of water in excess of that actually needed for the purpose for which the appropriation was made. These statements of Yaeger show that he claimed the right to the use of water to irrigate 120 acres of land, and not that he was diverting water for purposes of sale. The finding of the referee, which is supported by the evidence, is that at no time since the decree was rendered has he ever used more than 3.5 cubic feet of water per second of time, and the record also clearly shows that never since the original diversion has he used water in excess of that quantity. In 1882 he ceased to use either of his ditches in which theretofore the water was carried. He claims that by reason of seepage water coming upon his bottom land, he did not need any water direct from the stream from 1882 to 1884; and we think it is true that as to this quantity of water found by the referee to have been necessary to irrigate his farm, and which had been thus used, there was no waiver of Yaeger's rights thereto by this, or any other, act of his.

In addition to this, however, he asserts that he really enjoyed the use of all this water as the result of an agreement

with The Pleasant Valley and Lake Canal Company, made in 1884, whereby he gave to it the right to use his priorities in excess of the quantity needed by him to irrigate his own farm, in return for the carrying by the company through its ditch of all the water covered by these priorities. But this claim is not borne out by the evidence. There is a failure to show that this alleged agreement was ever entered into, or ever carried out, or that any such excess of water was ever turned into that company's ditch or enjoyed by it.

Upon the foregoing facts, neither Yaeger nor his grantee can be heard to assert a claim to the full quantity fixed in this decree, not because the decree is in any way set aside, but because by its very terms, as well as by the general law upon this subject, no claimant of any of the priorities therein established can maintain a claim to an excessive quantity of water.

There is an entire failure of proof that either Yaeger or any one in his behalf has made any beneficial use of the excess of water to which now the plaintiff asserts his right. The appellant argues that a corporation, under our laws, is allowed to divert from a natural stream water for a speculative purpose,—that is, to divert it for the purpose of selling it to anticipated purchasers, although the corporation itself has never made any beneficial use of any part thereof. By analogy, therefore, he contends that the same power should be given to a natural person. We have no hesitation in accepting this conclusion and holding that a natural person in this respect would have the same rights as a corporation, and that either might, in accordance with the doctrine announced in *Strickler v. Colo. Springs*, 16 Colo. 61, sell the right to use water. This, however, is not the question here. But, if it were, we apprehend that a corporation may not divert water from a stream and make beneficial use of a portion thereof, and as to the residue so diverted never make any use whatever, for over twenty years from the time of the original diversion, for more than eighteen years from the time of an additional diversion, and for more than nine

years after its rights to the quantity thereby diverted have been judicially established, and then be heard to assert its claim to such excess after subsequent appropriators had continuously, adversely, openly and notoriously been enjoying the use thereof for such length of time.

We are cited by appellant to the case of *Wimer et al. v. Simmons*, 39 Pac. Rep. (Ore.) 6, as an authority for the proposition that nonuse of a portion of a ditch for fourteen years is not conclusive evidence of abandonment of water right. Nonuse, alone, is not sufficient evidence thereof. The intention to abandon must also be present. But the facts of that case were that the owner of the ditch and the water right ceased to use only a small portion of his ditch for that length of time, but during all of such time he actually used all the water to which he was entitled in other parts of the ditch. As has been said by this court: "A distinction must be observed between the abandonment of an irrigating ditch and the abandonment of the right to the use of water for irrigation." *Nichols v. McIntosh*, 19 Colo. 22. Besides, other acts and declarations of the owner were in evidence in the case cited, from which it clearly appeared that there was no intention upon his part to abandon his right to the use of water. In that case, indeed, there was shown neither a nonuser of water nor an intention to abandon the same, but only a nonuse of a portion of the ditch through which the water was carried. Under the facts of the case, the court properly held that an abandonment was not proven, and that, consequently, the defendant, being the owner of the water, a change of the place of use by him could be made, notwithstanding this change deprived subsequent appropriators of the use of a certain portion of the water which, during the fourteen years, they had enjoyed by reason of its not having been used by defendant in that portion of the ditch which he abandoned;—upon the theory that the existence of such right followed as a necessary incident of ownership, and to deny the right to change the place of use would be inconsistent therewith. The case is quite dissimilar to

the case at bar, for Yaeger never made use of any portion of either of his ditches for more than nine years, and of no part of this water in excess of 3.5 cubic feet per second of time during a period of from eighteen to twenty-one years, and this was an unreasonable length of time for an owner of a water right not to make any use thereof, to entitle him afterwards to reclaim it as against intervening rights.

The evidence upon this point was sufficient to support the finding of the referee that Yaeger had abandoned such excess, and that it had been thereafter legally appropriated by others, whose rights were evidenced by this decree. *Davis v. Gale*, 32 Cal. 26; *Union Water Co. v. Crary*, 25 Cal. 504; *Ortman v. Dixon et al.*, 13 Cal. 33; *American Co. v. Bradford et al.*, 27 Cal. 360; *Atchison v. Peterson*, 20 Wall. 507–514; *Sieber et al. v. Frink et al.*, 7 Colo. 148; *Dorr v. Hammond*, 7 Colo. 79.

As this conclusion deprives plaintiff of all the water claimed under these priorities in excess of 3.5 cubic feet per second of time (and as the latter amount was reconveyed by plaintiff to Yaeger before this suit was brought), it is unnecessary to determine whether or not the proposed change in the point of diversion and place of use injuriously affects subsequent appropriators, for any use at any place of such excess by plaintiff would violate their rights.

In this connection it is pertinent to observe that were the decree not in this case, and the rights of the plaintiff resting solely in grant, the claim certainly could not be successfully maintained merely because the deed of conveyance passed to the grantee a given quantity of water that, as against the world, such amount would forever remain his, unless voluntarily disposed of; nor would the deed protect the grantee, if he had not for a long series of years made any beneficial use of the waters diverted. In principle, the case cannot be different when a claimant's rights are derived from an appropriation. The policy of our law is to enforce an economical use of the waters of our natural streams. They are the property of the people, subject to appropria-

tion for beneficial use.  The acquisition of the right to the use thereof results from such appropriation, and not from a grant by the state.  But one may not, as against subsequent appropriators, divert, and indefinitely or for an unreasonable length of time hold, water for purposes of mere speculation, and make no beneficial use of it, while so holding ; nor may he divert more than he needs for the purpose of which the diversion was made, though he may change the use or sell his right to another.  So that this decree as to a claimant thereunder—no more than does a deed of conveyance to a grantee from one unquestionably the owner—affords no protection as to the waters thus diverted, if they are not within a reasonable time . applied to a beneficial use.  Nor does the decree, being, as is a deed, merely one kind of evidence of a right to the thing owned, possess such verity as to protect a claimant thereof against the consequences of an abandonment, applicable as well to this class of property obtained by appropriation as to other kinds of property acquired by grant.

We must not be understood as resting this decision solely, or even necessarily, upon this decree.  Even were the clause quoted, limiting the claimants to an economical use of water and to a quantity necessary only for the purposes of the appropriation, absent from the provisions of the decree, the result would be the same.  The law of the case, independent of the decree, is to this effect, and would be read into the decree by this court.

We repeat that this ruling does not overturn the decree, but it is in accordance with the decree and the law upon which it is founded.  It follows that whether we adopt the conclusion of the court below to the effect that an abandonment of this excess of water was made by Yaeger and acquired by subsequent appropriators, or whether we hold with the trial court that the decree itself gave him only sufficient water with which properly to irrigate 120 acres of land,—both of. which conclusions we do affirm,—in either case, or in both cases, as to the quantity of water decreed to

Yaeger, only such portion thereof as has been used by him, either for the purposes of irrigation or for the purposes of sale, within a reasonable time after the original diversion, can now be enjoyed by him or by his grantee. We consider the true intendment and the meaning of the decree itself, as well as the law, to be in accordance with these conclusions.

The judgment of the court below should be affirmed.

*Affirmed.*