[No. 7894.]

PARSONS ET AL v. FORT MORGAN RESERVOIR & IRRIGATION COMPANY ET AL.

1. WATER RIGHT—*Abandonment*—Abandonment consists of two elements, act and intention.

2. ——*Evidence—Burden of Proof.* Whoever asserts the abandonment of a water right has the burden of proof. Mere non-use, for a period less than the statute of limitations, of water to which one has an adjudicated priority, is not sufficient to establish an abandonment. Non-use for a considerable time, with acts tending to show an intention not to resume it, may constitute abandonment.

The evidence examined and held to show that the right in question had been abandoned.

3. ——*An Adjudicated Priority for the Use of Water,* may be lost by abandonment.

4. INJUNCTION—*When Allowed,* to restrain the assertion of an abandoned water right or the diversion of water thereunder.

*Error to Morgan District Court.*—Hon. H. P. Burke, Judge.

Messrs. Allen & Webster, for plaintiffs in error.

Messrs. Stephenson & Stephenson, for defendants in error.

In the summer of 1911 the Ft. Morgan Reservoir and Irrigating Company and others brought an action against F. B. Parsons and others, the purpose of which was to have priorities awarded the Parsons ditch decreed abandoned. The defendants answered, putting in issue the material allegations of the complaint upon which the abandonment of the priorities in question was predicated. The cause was tried to the court and a decree rendered adjudging that the priorities involved were abandoned, and decreeing that the defendants be forever restrained and enjoined from diverting any water thereunder. The defendants bring the case here for review on error. The only question urged upon our attention which presents any merit is, that the testimony is insufficient to sustain the judgment of the court.

In November, 1895, under statutory adjudication proceedings, the Parsons ditch was awarded priority No. 2 as of date January 1st, 1871, for four cubic feet of water per second, and priority No. 46 for 48 cubic feet as of date September 8th, 1889. There is some conflict in the testimony as to the date when water was last diverted through the ditch for the purpose of irrigation, it being the contention on the part of the defendants that water was so diverted as late as 1897, and possibly 1898; there is testimony, however, to the effect that in 1895 a flood occurred in the river which destroyed the diverting dam and so injured the headgate and lowered the river channel that the ditch was not thereafter used. It also

appears from the testimony that in 1898 Parsons, one of
the owners of the ditch, constructed a dike across its
mouth in order to prevent lands under the ditch from
being flooded. It is clear from the testimony that after
this date. the ditch was not used for any purpose. It
also appears that from this time, and possibly for some
time prior, no work was done upon the ditch; that it was
broken in one or more places; that it had been filled in
by the construction of roads across it,—although Parsons
testifies that he objected to the construction of one high-
way, and was told by the county commissioner with whom
he talked that if the ditch was put in repair an opening
through the fill would be made so as not to interfere with
the flow of water in the ditch. There was also testimony
on the part of the defendants to the effect that the own-
ers of the Parsons ditch were not financially able to put
it in repair, and that they endeavored to secure funds
for this purpose or change the intake of the ditch to a
point further up the river or construct another ditch, but
were unsuccessful. About 1900 or the year following
Parsons and others commenced the construction of the
Parsons and Bechtolt ditch, the headgate of which was
some distance down the river from the Parsons headgate.
On behalf of the defendants the testimony is that this
ditch was intended to carry the water of the Parsons
priorities, although its dimensions were such that it
would not have been nearly sufficient for this purpose.
Later it developed that the Parsons and Bechtolt ditch
interfered with a ditch known as the Trowell, and that
on account of this conflict the upper portion of the Par-
sons and Bechtolt ditch only was completed, and that it
was thereafter abandoned and no water ever run through
it. The Parsons ditch was owned by the Parsons Irri-
gating Ditch Company. The charter of this company
expired in 1910, and for some time prior to that date
meetings of the stockholders were not held. To build

the ditch money had been obtained from a Mr. More by pledging the greater portion of the stock as collateral. This occurred in 1890. In 1902 Mr. More ádvanced some-thing like eighty dollars to assist in defending the water rights of the ditches in that locality, which were involved in litigation with ditches taking their supply of water further down the river. He testifies that this advance was made to protect his interest as pledgee of the stock. He also testified that he had informed the officers of the Platte and Beaver ditch that they had his permission to run the first Parsons priority through their ditch if they needed it. This was probably in 1901, 1902 and 1903. No price, however, was asked for the water nor was there any consideration for its use,—if in fact such diversion was made. According to the testimony of Parsons for the defendants, he diverted some of the water of the Par-sons priorities through the Trowell ditch. This was dur-ing the years 1905, 1906 and 1907, and the diversion was for a period of about three days during each of these years, in volume equal to about the first Parsons priority. It also appears from the testimony that during these years, and perhaps for most of the time after the use of the Parsons ditch ceased, that Parsons took water from the Platte and Beaver ditch because, as he said, it was cheaper than to repair the Parsons ditch. The evidence discloses that the major portion of the lands owned by the Parsons people under the Parsons ditch had been sold under a trustee's deed in 1895, and that about 1909 de-fendant, Parsons, disposed of his land. About 1909 Stratton, one of the defendants, purchased the stock held by More. An attempt was then made by the owners of the Parsons ditch to resume the use of the priorities of the latter by diversion through other ditches. To this end application was made to the Lower Platte and Beaver Ditch Company, the directors of which agreed that the Parsons first priority might be so diverted, but it appears

that the contract intended to evidence this arrangement was never executed. Similar arrangements were also attempted to be made with The Snyder Ditch and Reservoir Company respecting the second priority, but were never carried out. It does not appear that the Parsons priorities were to be used beneficially through either of these channels. In 1910 or 1911 an action was commenced by the holders of the Parsons stock, the purpose of which was to obtain a decree permitting a change in the point of diversion of the Parsons priorities, part to the Platte and Beaver, and part to the Snyder ditch. This action was pending when the cause under consideration was commenced, and a decree had been rendered permitting the change prior to the date of the trial of the present action. The testimony also establishes that prior to the date when More transferred his stock to Stratton he had transferred four shares to Mrs. Parsons, the divorced wife of the defendant, Parsons. The principal of the loan by More was between $1,200.00 and $1,400.00, no part of which was ever paid by the Parsons people, neither did they pay any interest thereon after 1893. Stratton paid More for his stock the sum of four hundred dollars, and obtained Mrs. Parsons' stock for the sum of one hundred dollars. What Stratton thus purchased represented nearly all the stock of the company. After the purchase, part of this stock Stratton transferred to Parsons, the consideration for which was his equitable interest in the Parsons ditch.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The burden was upon the plaintiffs to establish abandonment, and in order to sustain a finding that a water right has been abandoned the testimony bearing on the subject should be clear and convincing. Abandonment consists of the two elements, act and intention, and non-

use alone of the water represented by decreed priorities, at least short of the period of the statute of limitations, is not sufficient to establish abandonment, but non-use continued for a considerable length of time, coupled with other acts of a character tending to show an intention on the part of the owner not to resume or repossess himself of the water represented by priorities which he has ceased to use may constitute an abandonment. *Alamosa Creek C. Co. v. Nelson,* 42 Colo. 140, 93 Pac. 1112; *White v. Nuckols,* 49 Colo. 170, 112 Pac. 329; *Green Valley Ditch Co. v. Frantz,* 54 Colo. 226, 129 Pac. 1006; *San Luis Valley I. District v. Town of Alamosa,* 135 Pac. 769; *O'Brien v. King,* 41 Colo. 487, 92 Pac. 945; *Beaver Brook R. & C. Co. v. St. Vrain R. & F. Co.,* 6 Colo. App. 130, 40 Pac. 1066; *New Mercer Ditch Co. v. Armstrong,* 21 Colo. 357, 40 Pac. 989; *Putnam v. Curtis,* 7 Colo. App. 437, 43 Pac. 1056; *Hall v. Lincoln,* 10 Colo. App. 360, 50 Pac. 1047; *Sieber v. Frink,* 7 Colo. 148, 2 Pac. 901; *Platte Valley I. Co. v. Central Trust Co.,* 32 Colo. 102, 75 Pac. 391.

The question necessary to determine is whether the evidence sustains the judgment when tested by these rules. The testimony unquestionably establishes that the Parsons ditch was abandoned in 1898, and probably as early as 1895 or 1896. No use of the priorities awarded the ditch was made through that channel after 1898, and from the testimony the trial court may well have concluded that the use of water through that ditch ceased in 1895 or 1896. In 1900 or the year following Parsons started to construct the Parsons and Bechtolt ditch, but water was never diverted through it and it was abandoned. In 1902 More advanced some money to assist in paying expenses connected with litigation between ditches in Morgan and Logan counties, but this advance was on his own account as pledgee of the Parsons ditch stock. In 1901, 1902 and 1903 he granted permission, so far as he had any authority, to run the first priority of

the Parsons ditch through the Platte and Beaver ditch; but there was no consideration for this use. Parsons diverted some of the Parsons priorities through the Trowell ditch in 1905, 1906 and 1907, but in circumstances from which it is apparent that these diversions were a mere pretense to establish a use of water which he did not need, as he was taking water from another source.

A use of water, in order to prevent an abandonment, must be in good faith: besides from the testimony it appears that before he commenced this use the water had not been used for at least seven years, and possibly not for ten. The Parson ditch had been abandoned during all this period and meetings of the stockholders had not been held for several years. From these circumstances it could be inferred that an abandonment had taken place before the attempt to use the water in 1905. If this were true then the use in 1905 would not revive rights which had been lost by abandonment. The same can be said of the efforts of Stratton in 1909, and besides it does not appear that the Parsons priorities were to be used beneficially through either the Platte and Beaver or the Snyder ditches. In 1895 the greater portion of the Parsons land was sold under a deed of trust, and about 1909 the plaintiff in error, Parsons, disposed of his land.

In brief, the testimony bearing on the subject of abandonment, where there is any conflict, is sufficient to sustain the finding that the priorities involved were abandoned, and where there is no conflict, is of a character from which the conclusion can be deduced that the acts upon which the claim of non-abandonment was predicated were not in good faith, and were but pretences to evince an intention which in fact was not entertained. In these circumstances we are not justified in reversing the findings of fact upon which the trial court

based its judgment. The judgment of the district court is affirmed.

*Judgment affirmed.*

Chief Justice Musser and Mr. Justice Bailey concur.