[No. 8521.]

ARNOLD ET AL. V. ROUP.

1. WATER RIGHTS—*Adjudication of Priorities—Decree Construed.* A decree which settles the priority of a particular ditch, and declares the beneficial application of the prescribed volume, leaving nothing as to the volume

open to future ascertainment and settlement in the same proceeding, or in any subsequent, independent action, is absolute, and not conditional as to any of its features. (318, 322.)

The volume prescribed in such case is as much *res judicata*, as any other fact necessary to a completed appropriation. None of such matters are open to question in an action instituted more than twenty years after the entry of such decree. (324.)

2. —— *Power of the Court.* The court has no authority to control the use of the water, subsequent to the decree. A prohibition to use more than a specified volume upon a specified acreage is beyond the jurisdiction of the court. (323, 324.)

3. —— *Right to Apply Water to Other Lands,* than those upon which the right has ripened, is incident to the ownership of the water. (325.)

4. —— *Abandonment.* Consists in non-user, with an intention on the part of the appropriator not to re-possess himself of, or further use, the water.

Non-user for a considerable time, nothing indicating an intention on the part of the appropriator to resume the use, warrants the inference of abandonment. (324, 325.)

5. —— *Evidence—Burden of Proof.* Whoever demands judgment that an adjudicated right to the use of water has been abandoned, has the burden of establishing his case by clear and convincing-evidence. (324, 325.)

6. —— *Pretended Use.* The diversion of water when not needed, for the mere purpose of making a false appearance of its use, will not dispel the inference of abandonment from lnog continued non-user. (325.)

*Error to Routt District Court.* Hon. JOHN T. SHUMATE, Judge.

Mr. G. K. HARTENSTEIN, Mr. J. M. CHILDRESS and Mr. CHARLES A. MORNING, for plaintiffs in error.

Mr. ERNEST W. NORLIN and Mr. T. M. MORROW, for defendant in error.

GARRIGUES, J., delivered the opinion of the court.

The owner of the Collins ditch brought this action to have declared an abandonment of a portion of the Simon ditch decree for irrigation, and to enjoin plaintiffs in error from diverting any portion thereof in excess of 1-2/3 cubic feet per second. The court found that the decreed amount

over and above 4.86 cubic feet per second had been aban-
doned, and enjoined the use of the excess. Defendants
bring the case here on error.

Plaintiffs in error, except the water commissioner, own
the Simon ditch. Defendant in error, Jackson T. Roup,
owns the Collins ditch. Both ditches divert water from
Middle Hunt Creek in Routt County, and the headgate of
the Collins is below the headgate of the Simon ditch.

One Peter Simon located a government homestead on
160 acres of land, and in 1900 preempted an additional
quarter section, to both of which tracts he obtained title.
He also leased from the state, a school section which he held
for some 20 years prior to 1910. These tracts are contig-
uous, and, in the main, all the land is under the Simon ditch.
During, or prior to 1888, Simon constructed the Simon
ditch for the purpose of diverting water from the creek
for the irrigation of the lands under the ditch, and at the
first general adjudication proceeding in Water District No.
58, a decree was entered September 22, 1892, settling the
volume and priority to all the irrigating ditches in the dis-
trict, by which Simon as claimant obtained a decree for the
Simon ditch No. 50, by which it is awarded ditch priority
No. 52 for 10 cubic feet per second, which had been bene-
ficially applied in the irrigation of 600 acres of the land.
It then recites: It is hereby adjudged and decreed that
there shall be allowed to flow into said ditch from said creek
for the use aforesaid, for the benefit of the parties lawfully
entitled thereto under and by virtue of appropriation, by
original construction, priority No. 52 to 10 cubic feet per
second, dating from June 1, 1888. The decree among other
general provisions, contains the following:

"Throughout said water district No. 58 one cubic foot
of water per second of time, or 60 cubic feet of water per
minute, is hereby adjudged to be sufficient in amount to
properly and practically irrigate sixty acres of land, and

nothing in this decree shall be taken or held to grant to any tract or parcel of land water to any greater amount than in said ratio and proportion, whether the said land be covered by one or more ditches."

The Collins ditch was subsequently constructed, and thereafter a decree was entered September 19, 1910, settling its priority of appropriation which gave to it No. 206; ditch priority No. 143aa, dating from October 14, 1898, and fixed the volume appropriated to a beneficial use upon a 160 acre tract for which it was constructed to irrigate, at 2-1/3 cubic feet per second. In 1910, Roup, plaintiff below, purchased this tract together with the Collins ditch and water. The same year, Simon sold and conveyed to plaintiffs in error by deeds which were duly recorded, all his interest in the Simon lands, ditch and water. The method of consumating this transaction does not clearly appear, but that is immaterial, inasmuch as their right and title to the volume decreed the ditch, not found to have been abandoned by Simon, is not disputed. The Simon lands consisted principally of meadow, pasture and cultivated lands; the meadow land predominating. About 1909 or 1910, the State released the school section to the United States, and it was thrown open to entry upon payment to Simon by the entrymen, for his improvements, including the ditch and water rights. Some arrangement or settlement seems to have been made whereby Arnold purchased Simon's homestead, Gumlick his preemption, and others settled upon the school section, they together purchasing the Simon ditch and water. In other words, they individually or collectively succeeded to all the rights of Simon, in all the land and improvements thereon, including the ditch and water. These negotiations were in progress during 1910. There was no farming that year, no water was used on the land from the ditch, and it became filled up in some places, and broken in others. Portions of the ditch lie in

a mountainous country, and it was necessary to repair breaks and clean it each year. In 1911 plaintiffs in error repaired broken portions of the ditch, and cleaned it out so it would carry 16 cubic feet per second, with the view of obtaining a second priority for a first enlargement, and diverted and beneficially applied upon the land the ditch's decreed appropriation from 1911 until and during 1913; and February, 1914, Roup commenced this action. He pleads the Simon decree of 1892; the Collins decree of 1910; his ownership of the Collins land, ditch and water, and alleges that Simon since his decree and up to 1910 had not diverted, applied beneficially, nor used more than 1-2/3 cubic feet of water per second on to exceed 100 acres of land, and that the excess was, prior to 1910, voluntarily abandoned by Simon, and beneficially applied by plaintiff; that in 1910 Simon conveyed his land, ditch and water to the various defendants, except Hutchinson, who is water commissioner, and they now claim to own the full volume of the decree, notwithstanding the alleged abandonment; that the conveyances, except as to the 1 2/3 feet not abandoned, are a nullity and void, and were made in defiance of plaintiff's vested right to the use from the stream of the abandoned water; that during the irrigation season of 1913 the water commissioner, notwithstanding the abandonment, recognized the Simon decree to its full volume, as senior to the Collins appropriation, and permitted defendants (plaintiffs in error) to divert the whole 10 feet, although they had not to exceed 200 acres under the ditch subject to beneficial irrigation, which deprived plaintiff of the use of the water; that defendants are preparing to, and will, commence at once to enlarge their irrigated acreage, and the use of the Simon appropriation by bringing large tracts of new land under irrigation which, from the enlarged use of the water, will deprive plaintiff in times of scarcity of his appropriation under the Collins ditch, and he prays for a decree

restricting defendants to the use of so much of the water decreed the Simon ditch as has not been abandoned since the decree, when used at the ratio of one cubic foot to 60 acres of land; that the court specifically define and enforce the Simon decree; that the amount of water to which the ditch is now entitled be determined, and the decree reduced according to law and equity, and the plaintiff's right to the use of the water be adjudged and determined.

The court found while there was decreed to the Simon ditch 10 cubic feet per second with priority dating as of June 1, 1888, which had been beneficially applied for the irrigation of 600 acres of land, still, from the evidence in this case, there had not in fact, prior to 1898, been brought under cultivation and beneficially irrigated to exceed 291.64 acres of land, through the Simon ditch, and that there had not been beneficially applied and used to exceed 4.86 cubic feet per second for the irrigation of the land; that if more than one cubic foot per second for each 60 acres had been used and permitted to flow from the ditch upon the land, it was unnecessary for its irrigation, and was in derogation of and contrary to the provisions of the decree of 1892; that a diversion of more than 4.86 cubic feet per second should not have been permitted, through the ditch, for the irrigation of the lands, and it entered a decree to that effect and perpetually enjoined the diversion of any water on the decree in excess of that amount.

2. It is uncertain whether the original purpose and object of this action was to have declared abandoned some portion of the volume decreed the ditch, or whether it was intended as an independent action in equity brought to adjudicate and settle the volume of an inchoate or conditional decree. It appears to contain both features. We are impressed that counsel who prepared and tried the case below, entertained a theory that the Simon ditch decree was conditional—based upon the future beneficial application of the

water. Here, counsel for defendant in error contend that the Simon ditch decree is absolute, and base their argument in support of the judgment below, upon abandonment. The two theories are irreconcilable, and the complaint should have been more specific and certain, so the court might have known definitely whether it was trying an abandonment case, or settling the volume of a conditional decree. From the remarks of the court as well as the findings, it appears to have regarded the Simon decree as conditional, and that the purpose of the action was to adjudicate and settle its conditional features, as to volume, and counsel in support of such findings cite *Drach v. Isola,* 48 Colo. 134, 109 Pac. 748. In the same brief, however, they contend that the Simon decree is absolute, and in support of the abandonment theory cite *New Mercer Ditch Co. v. Armstrong,* 21 Colo. 357. Both theories are so intermingled, we feel a satisfactory disposition of the case here, involves a determination of whether the judgment can be sustained upon either.

3. The Simon ditch decree of 1892 is absolute. It settled the volume and priority of the ditch, and left no conditional provision as to volume open for future ascertainment and settlement in the same proceeding, as was done in *Waterman v. Hughes,* 33 Colo. 272, 80 Pac. 891, or to be ascertained in a subsequent independent suit in equity as was done in *Water Co. v. Tenney,* 24 Colo. 344, 51 Pac. 505; *Conley v. Dyer,* 43 Colo. 22, 95 Pac. 304; *Drack v. Isola, supra,* and *Crawford Co. v. Needle Rock Co.,* 50 Colo. 176, 114 Pac. 655. See also *Farmers Co. v. Rio Grande Co.,* 37 Colo. 512, 86 Pac. 1042. The court ascertained, determined and settled that 10 cubic feet per second had at that time been diverted and beneficially applied through the ditch, in the irrigation of 600 acres of land, at the ratio of one foot to 60 acres. It dealt with precedent and present facts, not conditions to be performed regarding the beneficial applica-

tion of the water; by decree it settled a completed appropriation and no judicial construction is required to ascertain its meaning. Beneficial application was adjudicated, and is not a condition left open by the decree for future ascertainment and settlement. An adjudication decree must settle the volume of the appropriation or it is no adjudication. There is no middle ground. If it fixes an amount which it leaves conditional, depending upon beneficial application, then nothing as to volume is settled. The court is without authority to fix a definite volume before the amount has been beneficially applied. In *Drach v. Isola, supra,* the Four Mile ditch, at the general adjudication proceeding in 1889, was awarded a conditional decree as to volume and the subsequent suit was to ascertain and settle the volume appropriated. The ditch in the original adjudication proceeding was given a specific ditch priority number, but the volume was based, not upon the water that had been beneficially applied, but conditionally upon the carrying capacity of the ditch, the amount of land under it or that could be brought under it by extensions proposed to be irrigated and the future beneficial application of the water. The conditional part of the decree being the bringing of the lands under the ditch into cultivation and applying the water thereon with reasonable diligence in the future. In the instant case the completed appropriation of the Simon ditch, as to volume was ascertained and settled, and the decree does not contain the conditions found in *Drach v. Isola,* with regard to applying the water with reasonable diligence.

4. While the lower court found that the adjudication decree awarded to the Simon ditch 10 cubic feet per second upon the basis that the water had been applied beneficially to 600 acres of land, still it finds from the evidence on this trial, that prior to 1898 no more than 291.64 acres had been brought into a state of cultivation and irrigation, and upon the ratio of allowing one cubic foot to each 60 acres, it

settles the volume beneficially applied, at 4.86 cubic feet per second, instead of 10 feet. Of course, if the court intended this as a readjudication of the volume of the ditch's appropriation, the finding cannot be sustained. There could be no readjudication of what had already been finally adjudicated. The volume was as much *res judicata* as any other question which it was necessary to determine in order to constitute and establish a completed priority of appropriation and none of these matters could be readjudicated in this action. *O'Brien v. King*, 41 Colo. 487, 92 Pac. 945.

5. Abandonment is a question of fact and must be proven. Abandonment of an appropriation consists in non-use, coupled with an intention of the owner not to repossess himself of the use of the water. Such intention may be express or implied. Where non-use is shown which is continued for a considerable length of time, and the acts of the owner show no intention of resuming the use, it may be sufficient to imply the presence of an intention to abandon the right, and when legitimately implied becomes proof, as a fact, of abandonment. *Green Valley Co. v. Frantz*, 54 Colo. 226, 29 Pac. 1006; *Parsons v. Fort Morgan Co.*, 56 Colo. 146, 136 Pac. 1074.

A general adjudication decree settling the appropriation of a ditch for irrigation cannot be collaterally attacked except for jurisdictional matters appearing upon the face of the record proper. In all collateral attacks based upon abandonment, the evidence of intention which may be drawn from non-use, must of necessity be limited to a time subsequent to the decree. *O'Brien v. King, supra; Consolidated Co. v. Evans*, 59 Colo. 482, 149 Pac. 384.

The right to divert from the natural streams a definite volume of water in a fixed order of priority is one of the most valuable property rights known to the law, and one who brings an action to have such decreed right declared abandoned, assumes the burden of definitely proving aband-

onment as a fact by clear and convincing evidence. *Platte Valley Co. v. Central Co.*, 32 Colo. 102, 75 Pac. 391; *O'Brien v. King, supra; White v. Nuckolls*, 49 Colo. 176, 112 Pac. 329; *Parsons v. Fort Morgan Co.*, 56 Colo. 150, 136 Pac. 1024.

This vested right to the use of the water may be sold and transferred either with or separate from the land upon which it ripened, or changed to other lands, and does not depend upon the point of diversion, the place of application, the conduit, or the character of the use; any or all of these may be changed, subject to the injurious effect which the harmony with and keeping within the jurisdiction of the change may have upon the vested rights of others to the use of the water in the stream. *Cache la Poudre Co. v. L. & W. Co.*, 25 Colo. 144, 53 Pac. 318, 71 Am. St. 123; *Ironstone Ditch Co. v. Ashenfelter*, 57 Colo. 31, 140 Pac. 177.

To prevent the inference of an intention to abandon that may be drawn from non-use, the water must be used in good faith. A use or pretended use of water not needed, but diverted under a pretense for the mere purpose of showing it was used, will not prevent the inference that may be made of an intention to abandon. A mere pretense by a show of acts made for the purpose of evincing a use which one does not in truth and in fact entertain, will not overcome the presumption that may be made of an intention to abandon from long continued non-use. *Parsons v. Fort Morgan Co.*, 56 Colo. 152, 136 Pac. 1024.

6. The evidence on the trial was not clear and convincing that Simon intended to abandon any portion of the decree, or that his use of the water was a pretense and not in good faith. From the whole record including the oral remarks of the court preceding the judgment as well as the findings accompanying it, we feel satisfied the court based its finding of abandonment, not upon intention to abandon reached as a legitimate inference of fact from the non-use of the water, but because it was applied in excess

of the ratio of one cubic foot per second to 60 acres of land, in derogation of and contrary to the provisions of the decree, which constituted a constructive abandonment. No legal construction could relieve the court from the necessity of finding such intention as a fact by clear and convincing evidence on the trial. If the implied intention from non-use in this case was a legitimate inference of fact which might have been properly drawn from all the evidence on the trial, we would not disturb the finding. The evidence, however, does not possess that clear and convincing character required which will warrant an inference of intention to abandon. The statutory adjudication of the relative priorities of the ditches in the water district for irrigation was a special proceeding in which the jurisdiction of the court was limited to an adjudication and settlement of the volume of the appropriation and priority of the various ditches. No authority is conferred upon the court to administer or control the use of the water thereafter. The law limits the owner's subsequent use to his necessities for irrigation, and the court when it fixed and settled the volume and priority of the ditch could place no other or greater restrictions upon the use of the water. Simon, after the decree, could use the water for irrigation, the purpose for which it was decreed, upon any number of acres upon which he could apply it beneficially. For the court to foreclose in the adjudication decree his right to use more than one cubic foot per second upon 60 acres of land, if that was its intention, was exceeding its jurisdiction. Suppose a settler on 160 acres of land possesses two ordinary 80 acre water rights. He might have 60 acres in small grain, all requiring irrigation at the same time, upon which all the water could be beneficially and advantageously applied, and he would have the right to apply it all at one time in the irrigation of the 60 acres. This is a property right of which he could not be deprived in an adjudication decree. If such

was the intention of the court that entered the adjudication decree, and if the lower court in this case based its finding of abandonment upon such use of the water in derogation thereof, then the judgment cannot be sustained. The basis of arriving at the volume of the decree was that 10 feet had been beneficially applied upon the land in the irrigation of 600 acres, and merely because it was used thereafter in a greater ratio than one foot to 60 acres of land would not justify or warrant an inference of abandonment. But it is by no means certain that the lower court intended by this decree to limit or restrict the use of the water, subsequent to the decree, to no more than one cubic foot per second upon 60 acres of land. We are inclined to believe the general provision was intended merely as a declaration of the ratio or basis adopted by the court, upon which it proceeded or acted in arriving at the volume of the appropriation to which the various ditches were entitled. This construction is in harmony with the keeping within the jurisdiction of the court.

There is no similarity between this case and *New Mercer Co. v. Armstrong*, 21 Colo. 357, 40 Pac. 989. In the latter case, the Yeager ditch was constructed for the irrigation of 120 acres of land owned by Yeager, for which he obtained a decree for 33.51 cubic feet per second, strange to say, in a water district where 1.44 cubic feet per second is generally regarded as a sufficient 80 acre water right, which made it a very exagerated and unusual case. Nine years after the decree, Yeager sold and conveyed the appropriation to the New Mercer Ditch Company, which reconveyed to him 3.5 feet for the irrigation of his 120 acre tract. The case turned wholly upon the question of abandonment subsequent to the rendition of the decree, and no other issue was involved. The finding of the lower court that all the water decreed the ditch except 3.5 feet retained by Yeager, had as a fact been abandoned since the decree, was sustained. In

the instant case, the court that settled the decree found that the water had been beneficially applied by Simon upon 600 acres of land under the ditch, and upon the ratio of one foot to 60 acres, awarded the ditch in volume 10 cubic feet per second. The court at that time under the rule adopted and upon the facts, awarded the ditch no more water than it was entitled and the question in the subsequent action was whether any portion of that amount had as a fact since been abandoned. Applying the same rule to the *New Mercer* case, Yeager would have received for his ditch a decree, not for 33.51 feet, but for 2 cubic feet per second for the irrigation of his 120 acre tract and the question for trial would have been whether any portion of that two feet had since been abandoned. The dissimilarity is apparent.

7. The complaint alleges that defendants are preparing to and will apply the water upon larger tracts and other lands than the 600 acres where it was used, which will result in an enlarged use of the water injuriously affecting the vested right of plaintiff to the use of the water in the stream. There is no change in the conduit or point of diversion. The charge is that additional lands will be broken out, under the ditch, upon which the water will be applied. The decree settled the volume that had been beneficially applied upon lands under the ditch, and whether it had at that time been spread upon all the land, under the ditch or upon which it was proposed to be used, is not material or controlling upon the right to use the water upon other or additional lands. *Weldon Valley Co. v. Farmers Co.,* 51 Colo. 545-549, 119 Pac. 1056.

The right to apply decreed water to other lands than those upon which the right ripened is incident to the ownership in the use of the water. *Cache la Poudre Co. v. L. & W. Res. Co., supra; King v. Ackroyd,* 28 Colo. 488, 66 Pac. 906; *Platte Valley Co. v. Central Co.,* 32 Colo. 103, 75 Pac. 391; *Fulton Co. v. Meadow Island Co.,* 35 Colo. 588, 86 Pac. 748.

In *Cache la Poudre Co. v. L. & W. Res. Co., supra,* the Larimer and Weld reservoir was used to supplement the water rights in the Eaton canal. The ground of complaint was the buying of a water right by the reservoir company in the Jackson ditch, a decreed ditch, and transferring the place of its use to lands generally under the Eaton canal, whereby it was claimed the use was enlarged to the injury of the plaintiff. The theory of plaintiff was that there could be no transfer of the water right, or any change made in the place of its use which injuriously affected the vested rights of junior appropriators; that severing the water from the land under the Jackson ditch, where the right ripened, and applying it to lands under the Eaton canal, was an enlarged use which injuriously affected plaintiff. The sale of the right, and change in the place of its application, being upheld by us, the court then considers the injurious effect upon others to the use of the water in the stream occasioned by the change. The trial court had held that the application of the water to lands under the Eaton Canal would result in a larger use of the water than had been made of it by the consumers under the Jackson ditch, because it would be applied upon a greater area of land. But in reversing the lower court for this erroneous holding, we held that to show an injurious effect from this account, upon the vested right of others to the water in the stream, the evidence must show that the change in the place of application had increased the demands upon the supply of water in the stream, over and above what the original owner could lawfully have made; that to show enlarged use, the evidence must show that a greater volume was diverted into the Jackson ditch on its decree, after the transfer, than before; that merely because the same number of acres were irrigated under the Jackson ditch after the transfer, as before, and in addition to this some portion of the decreed water was used on lands under the Eaton canal, did not constitute an enlarged use;

that because more land was irrigated with the water which before the change in the place of use was employed on fewer acres, did not constitute an enlarged use, since no more water was diverted than was decreed to the ditch; that no inference of an enlarged use could be drawn from the fact that more land was irrigated; that because a greater acreage was being irrigated with the water decreed the ditch, since the transfer than before, does not indicate a greater diversion than the decreed right, and in the absence of abandonment is not an enlarged use which injuriously affects the vested rights of others to the water in the stream.

There is no question of Simon's right to sell the ditch and its decreed appropriation. This is settled by all the authorities. The water was for irrigation use and no time limit is placed upon such use by the decree. The right was acquired by priority of appropriation, and subsequently settled by the decree, and until lost by abandonment Simon was entitled to use the full amount of his decree whenever needed for the purpose for which it was decreed—irrigation. *Constock v. L. & W. Co.*, 58 Colo. 187-203, 145 Pac. 700, Ann. Cas. 1916A.

The purchasers from Simon succeeded to all his rights and privileges with regard to the use of the water for irrigation and could exercise such right whenever their necessity required.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

Chief Justice GABBERT and Mr. Justice SCOTT concur.